## Lauritz E. Rosenbom, et al., v. Andrew Renk.
### Gen. No. 11,868.

1. BILL OF EXCEPTIONS—*when properly signed.* A judge elected for another circuit may properly sign a bill of exceptions as a judge of the Superior Court of Cook County where he heard the cause, sitting as such a judge.

2. BILL OF EXCEPTIONS—*what not essential to validity of.* A bill of exceptions need not be settled and signed in the county in which the case is tried.

Action on the case for personal injuries. Error to the Superior Court of Cook County; the Hon. GEORGE W. THOMPSON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Reversed, with finding of facts. Opinion filed June 20, 1905. Rehearing denied July 7, 1905.

ELMER H. ADAMS, for plaintiffs in error.

THOMAS E. ROONEY, for defendant in error.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

The defendant in error moved to strike from the record

the bill of exceptions and his motion was denied, but as counsel on both sides have in their briefs argued the questions presented by the motion, we deem it proper to state the grounds upon which the motion was denied.

The *placita* shows that the case was tried before George W. Thompson, a judge of the Ninth Judicial Circuit, holding a branch court of the Superior Court of Cook county, and the bill was signed, "George W. Thompson (Seal.), Judge of the Superior Court of Cook county, Illinois." This we think was sufficient. Judge Thompson was, it is true, a judge of the Circuit Court of the Ninth Circuit, but he presided at the trial of this cause as a judge of the Superior Court and might properly sign the bill of exceptions as judge of the Superior Court.

It is also said that the bill of exceptions was settled and signed at Galesburg in Knox county. The settling of a bill of exceptions is a judicial act, so is the order that a *capias ad respondendum* issue a judicial act, but each is the act of the judge and not of the court. A bill of exceptions is authenticated by the judge by signing and sealing the same and it then, by the provision of the statute, becomes a part of the record in the cause. The order for a *capias* is indorsed under the hand of the judge, on the affidavit, and no order of court is made in either case. The jurisdiction of circuit judges is coextensive with the state. They have the same official powers in one county as in another. Settling or signing a bill of exceptions does not require the machinery of a court. In Sup. Court Ind. Order of Foresters v. Knowles, 113 Ill. App., 641, we held that a bill of exceptions might be settled and signed in a county or circuit other than that in which the cause was tried. The motion to strike out the bill of exceptions was properly denied.

This is a writ of error sued out by the plaintiffs in error, to reverse a judgment for $600 recovered against them by the defendant in error in an action on the case for personal injuries alleged to have been sustained by him by reason of their negligence. The defendants carried on a shop, in the basement of which they had a gas engine of fifteen horse

power.    The frame or bed of the engine was of iron and was about ten feet long, two feet wide and one foot deep and may be considered a box or trough, without a cover.    Upon the top of the frame, at its north end was fastened the cylinder.    The north end of the cylinder was the closed end.    Upon the top of the frame of the engine near its south end were fastened the bearings of the shaft of the fly-wheels.    The fly-wheels were six feet in diameter, placed one on each side of the frame.    They passed below the level of the floor of the room and extended beyond the south end of the frame.    In the middle of the fly-wheel shaft, over the box or trough made by the frame of the engine, was a double crank four inches long.    The motion of this crank, when above the line of the shaft, was away from the cylinder towards the south end of the frame.    The frame was only long enough to permit the crank to pass downward just inside the south end of the frame.    To start the engine it was necessary to turn the fly wheels in order to compress the air in the closed end of the cylinder before the gas was ignited.    This was done at least twice a day and frequently several times in a day and when it was done the belt was always thrown off from the tight pulley on to a loose pulley.

On the day that plaintiff was injured when the engine was stopped for the night, it so happened that the belt was not thrown off from the tight pulley.    Lauritz Rosenbom, one of the defendants, called to the plaintiff to go with him to the basement and help to throw off the belt.    They went to the basement and each took hold of the west fly-wheel to turn it. Plaintiff stood between the fly-wheel at the south end of the frame of the engine with his left foot on the floor and his right foot on the edge of the south end of the frame with part of his foot projecting over the inside of the frame. Standing in that position plaintiff and Lauritz Rosenbom, who stood west of the fly-wheel, pulled upon the wheel to turn it and as it turned the crank necessarily turned with it and as the crank came down inside of the south end of the frame it struck the right foot of the plaintiff, thereby causing the injuries complained of.

Rosenbom v. Renk.

The plaintiff had worked for the defendants five years before his injury. He was thoroughly acquainted with the construction and operation of the engine. He testified that for three years he had helped to start it, sometimes in the morning, sometimes at noon and sometimes twice a day, and that he once helped to take it apart and clean it. He further testified that he knew that the inside of the iron frame or base was hollow; that the crank as it went around went inside the iron frame, and that knowing this he put his foot on the upper edge of the frame and when the crank came around his foot was sticking over the edge of the frame and the crank as it came around struck his foot and crushed it. The only excuse for or explanation of his act that he gave was, "That it was so dark that you could not see how far you put your foot." Rosenbom took with him when he and the plaintiff went into the basement a lighted lantern, and plaintiff testified that this lantern at the time of the accident stood on the floor near the fly-wheel. The fact that the room was poorly lighted furnished no excuse for the act of the plaintiff in placing his foot upon the edge of the iron frame in such a position as that a part of his foot projected beyond the inner edge of the frame. He could tell by the sense of touch what part of his foot rested and pressed upon the edge of the frame and what part of it projected beyond the frame into the space through which he knew that the crank must pass at every revolution of the shaft. The act of the plaintiff in placing his foot where he did place it must under the evidence in this case be held a negligent act that directly contributed to his injury.

The judgment of the Superior Court will be reversed with a finding of facts.

*Reversed with finding of facts.*